The next case this morning is 524-0441 in the interest of Bruce M, a minor. Arguing for the appellant is Unsam Nam. Arguing for the appellee is Myles Kelher. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. Ms. Nam, on behalf of the defendant, would you like to proceed? Yes, your honor. May it please the court, counsel, assistant appellate defender Unsam Nam, on behalf of Bruce M. As a preliminary matter and as discussed in our briefs, due to the state's concession for count 2, the aggravated unlawful use of a weapon count, Bruce asked this court to agree with the parties and reverse the AUW adjudication outright. Thus, the only adjudication that remains before this court is count 1, the unlawful possession of a firearm adjudication, which Bruce also asked this court to reverse outright, because even when viewing the evidence in the light most favorable to the state, the state has failed to prove that 17-year-old Bruce constructively possessed his mother's black handgun, which was found under the front passenger seat of the minivan that his mother was driving on September 29. Counsel, would your argument be the same if the defendant was not a minor? If he's not a minor, did he constructively possess if he's not a minor? Your Honor, I believe the argument would be different if he was not a minor. I wouldn't say that an adult would have necessarily constructively possessed the firearm, but in our case, because he is a minor, because he is Alice Owen's son, I think that makes this case different than if this were two adults. I believe two adults were in the Thomas case and the Bailey case, and they're still helpful to Bruce's case here. But if this court wants me to go through, Thomas is when the owner and the driver of the car. So in Thomas, there was a extended magazine that was sticking out from under the front passenger seat. It was like five inches out. The owner and driver claimed that he didn't see the gun, or even if he did see the extended magazine, that he wouldn't recognize what it was. That's kind of similar to this case where an experienced officer, Detective Zills, testified that when he saw the front passenger seat, that there was like a black handgun hard case sticking out. But that's because he's an experienced officer. It doesn't mean that there's no evidence that Bruce, a minor, would recognize what that black hard case was that was sticking out from under his seat. Didn't the case have Glock on it? There's no evidence that there was the word Glock written on it. Zills just testified that there was a black hard case that was sticking out from under the seat, but there's no evidence that Bruce would have recognized what it was or that Bruce testified to or made any statement about what the handgun hard case was. What about the State's Exhibit 1, the photograph of the case? Doesn't it look like it's the last part of Glocks on there? Your Honor, I don't think we can assume what the minor saw. So Bruce is sitting in his mother's front passenger seat. Zills actually testified that from where Bruce was sitting, unless he looked down or looked under the seat, he would not have been able to see the gun or necessarily the Glock handgun hard case because the officer recognized what it was. He investigated further and found that it was the hard case, that behind the hard case, there was the Glock handgun, but there's no evidence or testimony or anything to link Bruce to recognizing what it was or to seeing the handgun hard case or the gun. And also, I think Bailey is helpful. Bailey is where the passenger in the car, there's a gun under the front passenger seat. And the front passenger, who's an adult, he was found to be not guilty of the gun that was found under his seat because the gun was not visible. And Bailey is the one where there was kind of a credibility issue with the defendant because Bailey testified or Bailey told the police at one point, well, McDonald, I think the co-defendant, co-defendant showed me a gun outside my house. I saw it, gave it back to him. The co-defendant showed me the gun in the car and I looked at it, gave it back to him. So in that case, Bailey testifies about seeing a gun, maybe holding the gun and giving it back to the defendant. But the court still found that he was not guilty of possessing that gun because the gun was not visible. He said that it was not his, that there were no gestures or any action on his part to hide the gun or retrieve the gun. And that's the same in this case. There's no action or behaviors on Bruce's part to either hide the gun, retrieve the gun, discard the gun. Basically, what happens in this case is the mom's minivan is pulled over. Bruce is in the front passenger seat. The mom tells the officers, hey, my guns are in the car. The officers removes Bruce as well from the car. And at that point, that's when Detective Zills sees that handgun hard case kind of peeping out. Further investigation leads to finding the gun that's entirely covered within the front passenger seat. So at that point, what about the fact that his fingerprint was on the magazine? Yes, Your Honor. So that's where on page, I believe, 26 and 27 of our opening brief. This case would be different, Your Honor, if Bruce and his mother were Illinois residents. In Illinois, this case would have been a different case, but they're Georgia residents. And as the minor indicates in his brief, pages 26 and 27, in Georgia, there could be multiple reasons why Bruce's one fingerprint is found on the magazine. It's not found on the gun. It's found on the magazine. And the state could have charged him with possessing ammunition, but the state didn't. The state charged him with possessing the black handgun. So the fact that there's a fingerprint on the magazine when there's there could be multitude of reasons of why his one fingerprint is on the magazine shows nothing as to his possession of constructive possession of the black handgun in Illinois. And I refer the support to the cases on page 17 of the minor's opening brief, like Bobo and McCurran and Peter Patterson, that's when the defendants in those cases actually take some sort of movement, shows that they're, you know, they either possess the gun or know of the gun or take some sort of actions to show their knowledge of the gun. There's no such knowledge or constructive possession or immediate or exclusive control of the area that the gun is found in this case, because of the mother and son dynamics found in this case. Again, Bruce isn't asking for a bright line rule that every time a child is in the car that the child is not guilty of possessing the weapon. Again, maybe if the gun was on his person, in his backpack, in his pocket, something like that would be a different story. But here it's his mother's gun. That's the other point that's really important in this case is that there's no question that Bruce did not own the gun and did not own the car. So the gun is found in the car that his mom is driving. His mom is the only adult in the car. There's four other minors in the backseat or in the back of the minivan, and they're not secured to their seats. Bruce is in the front passenger seat. And again, as Zils testified, and we're seeing Zils is credible, you can't see the gun from where Bruce is sitting. And again, Bruce doesn't make any actions to show that he knows that the gun is there. When the officers pull him out and then Zils finds the gun, Zils also tells the officers, you know, handcuff Bruce. At that point, that's when he says, that's not mine. And that's completely true. The other part that's important is that the mom bought the guns at a pawn shop and there's ATF records. So this is legally his mom's gun. His mom bought the guns in Georgia. The Alcohol, Tobacco, Firearm Explosives Bureau has her as the owner of the guns. So again, this isn't a case where the mom is trying to take ownership of the gun when it's not hers. These are both her guns. So there's no question about ownership here, which makes this case worse. The state's evidence is, in this case, worse than the cases that we cited, such as Fernandez or Scott or Wright or Thomas or Bailey. All the cases that we cite, this is worse. The facts in this case are worse, especially with the dynamics that are found in this case. Also, to talk about the mother and son dynamics, oh, I see my time is out. I will come back and rebuttal unless your honors have any questions. Okay, Ms. Naum, Justice McKinney? No further questions. Justice Welch? There's a difference between ownership and possession. That's what you're asking. In part, your honor, yes. So ownership is a way to show that the owner of the contraband or the car has control or access or authority over the area or the contraband. And in this case, Bruce has neither. He has neither the ownership of the gun, neither the ownership of the car. He doesn't have control over the car or the gun. It's his mom's car, his mom's gun. So he has neither in this case, your honor. When you say control, we say that he doesn't, but that doesn't necessarily hold true, does it? Justice Welch, we didn't hear you. So there's a difference between ownership and control. Would you ask your question again? We didn't hear it. My question was, you're talking about ownership. That's different than control. Yes, your honor. But ownership goes to whether there could be control, there could be access, there could be authority over the contraband or the car. But if he had control of it, that's all that's necessary, correct? Well, the car, but the gun. Well, your honor, he didn't have. So in this case, we're not talking about actual, actual possession. We're talking about constructive possession. So the control does matter. His knowledge does matter because this isn't where the gun was found on his person or his belongings. It was found in his mother's car. So control and knowledge. Wasn't it found right underneath him where he's sitting? Yes, your honor. But yes, your honor. Okay, that's all. Okay, I'll come back in rebuttal. All right, Mr. Kelleher for the state. Good morning, your honors. Counsel Myles Kelleher for the people. The people proved respondent guilty of unlawful possession of a firearm beyond a reasonable doubt. The evidence sufficiently established that respondent constructively possessed a Glock that was found under the front passenger seat. First of all, I'd like to mention that even though. Respondent and his mother were traveling from Georgia. Once they get to Illinois, they're required to follow the laws of Illinois. They're visiting the state. So whatever the law is in Georgia is doesn't apply to this case. Illinois law applies to this case. Secondly, the law doesn't require that respondent be the owner of the Glock. What we know here is that the mother, the ATF records indicated that the mother purchased the gun, the Glock in Georgia. Now, we don't know if she's still the owner. She may have very well given the gun to respondent. We don't know. That's not in the record. But it doesn't matter because all that matters here is whether or not respondent was in constructive possession of the Glock. And here there's ample testimony of that. The trial court heard from Officer Zills, who the trial court found to be a very credible witness. Officer Zills stated that after he asked the mother and respondent to step out of the car following a traffic violation, he saw a black gun case sticking out from under the front passenger seat. And it's notable as Justice McHaney mentioned, you can see in the photos, People's Exhibit Number 1 and 2, the letters C and K clearly on the gun case, which are the last two letters in Glock. Now, after officer saw the gun case, he looks under the passenger seat and he sees the Glock with a 30 round magazine attached. And didn't the officer also testify that it would not be possible for the defendant to see that gun unless he leaned down and looked under the seat? Yes, that's correct. So how did he constructively possess it? Well, if he didn't, where's your evidence? Where's the evidence that he knew the gun was in there? But I'll give you the gun case, maybe. But where's the evidence he had knowledge that that gun was under that seat? Your Honor, if you take a close look at People's Exhibit 1 and 2, you can see exactly the position of the Glock. And these photos were taken before the gun was moved. And you can see it's positioned right next to the metal supports holding the seat. And it's towards the front of the seat. And the officer testified, yes, if the defendant is just sitting in the seat, he wouldn't be able to see the Glock. But if he leaned forward and looked between his legs, then he would be able to see the Glock. And he would certainly be able to see the gun case. But the law doesn't require that the gun be visible to a person for that person to be in constructive possession. As long as it's within his immediate control and accessible to him. And here, the photos indicate that it was immediately accessible to respondent. And notably, it was uncased and it was loaded. And most importantly, or one of the most important factors, is that his fingerprint was on the magazine. Wouldn't he have, didn't the mother testify that he fired that gun at some point? Wouldn't it easily be, can't you assume easily that his fingerprint would have been on the magazine if he fired the gun previously in Georgia? Which has nothing to do with whether he knew that gun was under the seat in Illinois. Your Honor, these are all factual questions for the trier of fact. And the trier of fact had to, which was the trial court in this case, had to look at all the circumstances. And had to consider all the different possibilities and the arguments of counsel. And here, the trial court was, you know, clearly placed emphasis on the location of the gun and the fact that it was easily in reach of respondent, but it wasn't in reach of the mother who was in a driver's seat. Counsel, are you, if that was a, if instead of a gun, if that was a kilo of heroin, would this kid be guilty of constructive possession based on these same facts and same location of? Every case is unique and has to be tried on its own facts. It would depend on all the circumstances. Here, you have a situation where the gun is out of the case. The gun case is right next to respondent's feet. The gun is located right underneath. So, in your hypothetical, obviously, that would be up to the trier of fact to determine. And obviously, the state would have to prove its case beyond a reasonable doubt. But in these particular, in this particular case, it was up to the trial court to make credibility determinations, weigh the evidence, draw a reasonable intent. I understand that. But since you brought that up, the trial court, the trial court stated that the defendant denied the fingerprint was his. Where in the record is there, is that shown that the defendant actually made that denial? I don't believe that was in the trial record. So, therefore, then the trial court was in error in making that statement, wasn't it? Well, what the defendant, the respondent here, when the officer looked at the gun, he stated, that's not mine. Which is true, because it was the mother who purchased the gun. Well, it supports a reasonable inference that he knew the Glock was underneath the passenger seat. And even if the mother... How does it show that he knew the gun was there before? It shows the inference is that he knew the gun, he, when the officer found the gun, then he knew it was under the seat. And then he just simply stated the truth. That's not mine. Because when he's, when the respondent is standing outside the car, he can't see what the officer is seeing under the seat. So, but he volunteers, that's not mine. But he, well, at the same time, then he heard his mother tell the officers, officers, there are two guns in this car. You can retrieve them. Yes, and again, these were all facts and circumstances that the trial court had to consider and decide. And each case has to be decided on its own unique facts. And yes, there could be circumstances where a gun could be under a passenger seat and the passenger wasn't aware of it. However, in this situation, there was ample evidence that defendant or respondent was aware of it. And it doesn't matter whether his fingerprint was placed on that magazine, you know, one minute before the stop or an hour before or day before. It's evidence that the court could have considered regarding his knowledge of the weapon. And it wasn't required. There's no requirement that he had to touch the weapon at the time of the offense, at the time he constructively possessed it or, you know, immediately beforehand. He could still. He was a minor. How does he have the right to control anything? It's not his car. He was told to get in the seat. We're going to Illinois. Again, this is all these were all factors that the trial court had to consider and count the defense raised that issue at trial. They said, well, maybe the mother put the gun there. And that was something that the trial court considered when assessing all the facts of this case in the circumstances. And the trial court decided otherwise and it was it was a rational decision. It may not have been the decision that this court may have made or someone else may have made. But in reviewing the sufficiency of the evidence, the question is whether any rational trier of fact could have looked at these facts and circumstances and found the essential elements of the offense beyond a reasonable doubt. And here, that's the standard of review that this court must reply must apply. And here, the trial court rationally found sufficient evidence that defendant under these circumstances, these unique circumstances was in constructive possession of the firearm, the Glock. Any further questions? Justice McKinney? I know. Thank you. Justice Welsh. Further questions. All right. Thank you, Mr. Kelleher. Ms. Nam, on behalf of the defendant, rebuttal. Yes, Your Honor. First, we would ask this court to reject the assertion that the mom could have given the gun to the minor. The mom clearly said to the officers, my two guns are in the car or my guns are in the car. She's the one that tells the officers that the guns are in the car, not Bruce. The mom is the one that gives them permission to go get the guns. So that should be rejected. The mom clearly knew that her guns were in the car. It was in her purse. It was under her. It was under the front passenger seat of her car. And again, a rational trier of facts could not find Bruce guilty in this case. The evidence is not in contention. We're not saying that Zills is incredible. We are saying Zills is credible. He's the one that said from Bruce's position in the minivan, in the front passenger seat, that the Glock would not have been visible. And talking about the photos, even if the letter CK was visible, that doesn't mean there's no evidence that Bruce knows what a handgun fart case looks like. There's no evidence of his experiences with guns, even if his fingerprint is on the magazine. There's no other evidence that he is or has any experience with guns, Glocks, Glock fart cases. And also, if this court looks at the photos, they're taken from the perspective of the officers after they discovered the gun under the front passenger seat. It's not from where Bruce is sitting. So it's from under the seat after they find the Glock. So that's what the officers found and what the officers took photos of, but nothing to do with Bruce's perspective or his knowledge or control of the gun. And talking about control. So in this case, as we mentioned in our briefs, the mom has control. So if this court looks at the record, the mom was the one that told Bruce he couldn't plead guilty. The juvenile court recognizes it. The court's like, OK, the mom saying no, the minor is following the mom's rules. He's not going to plead. The mom is the one that kind of controlled Bruce's ability to come to court. So from the record, Bruce misses some court dates because maybe his mom was unavailable or mom was not going to come to Illinois. Mom let the attorney know. So the attorney, Bruce's attorney and Bruce's mom seems to be scheduling court dates as well. Based on the record, the mom told the attorney, hey, I have a court date coming up. We'll be in Illinois that things like that. So here it's clear that the minor under his his parents rule and control his legal guardian. He does not have a ton of control in his in his life or even in his own delinquency case. So that's very apparent from the record. And as counsel says, Illinois law applies, but there's no evidence of Bruce possessing the gun, the block in Illinois. Again, whatever happened in Georgia, that doesn't matter here. The state provided no evidence of either the fingerprint being put on there in Illinois or him having any control over the gun in Illinois. What happened in Georgia is what happened in Georgia. And again, page 26 to 27, there's multitude of reasons of why his fingerprint could have been on the magazine from Georgia. And lastly, I want to point out the cases of Wright and Tate's. Wright is the case where a defendant fell on top of a gun. And so the gun was right under his torso and it was still not in his possession, actual or constructive, because he did not own the gun. He did not own the residence. So even when the gun was found right under him, the court found that in Wright, the court found that he was not in possession of the gun. Tate's is similar. Tate's is when three defendants are in a dining room and there's drugs on the dining room table. So everyone is in close proximity. But because Tate's, the defendant, did not own the house, did not claim the drugs, had no control over the drugs. The court found that he was not in possession of the drugs or the packaging material. Similarly, the cases that we cite Adams, Adams is a man in a bathroom with cocaine in one of the cabinets. He was standing in front of the toilet when the police found him, but they still found that the drugs were not in his possession. Similarly, Scott, Scott is the one where Scott knew that there were drugs in a mailbox, but the key was owned by his mother. And his mother had full control over the mailbox. So even though he knew that there were drugs in there and he went to go get drugs, it wasn't in his possession. So, again, unless there's any questions, Your Honor, we ask this court to reverse outright the minor's unlawful possession of a firearm adjudication. Justice McKinney. Nothing further. Justice Welsh. Further question. All right. Thank you both for your arguments here today. This concludes the oral argument docket for August 19th and will be in recess. We understand this is an expedited case, and so we will issue an order in due course. Thank you. Thank you, Your Honors.